UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BBQ 4 LIFE, LLC, an Idaho Limited Liability Company, and BRAD TAYLOR, an Individual,<br><br>      Plaintiffs,<br><br>  v.<br><br>DICKEY'S BARBECUE RESTAURANTS,INC., a Texas Corporation,<br><br>      Defendant. | Case No. 1:18-cv-140-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it cross-motions for partial summary judgment on the remedies issue. The Court heard oral argument on April 16, 2019, and took the motions under advisement. For the reasons explained below, the Court will grant plaintiff's motion and deny defendant's motion.

## BACKGROUND

Plaintiffs claim that defendant Dickey's Barbecue Restaurants, Inc. has infringed plaintiffs' trademark by using it to promote the hundreds of restaurants Dickey's operates nation-wide, including five in the Boise Idaho area. Plaintiffs operate restaurants largely

Memorandum Decision & Order – page 1

in the Boise area and have a disputed presence in some other selected locations.[1] Plaintiffs' trademark involves an image of closed fists bearing the tattooed word "BBQ 4 LIFE" just below the knuckles in connection with a drawing of a bearded face resembling plaintiff Brad Taylor.

After plaintiffs filed this action, the parties attempted to reach a settlement. Their negotiations were stalled, however, when they could not agree on the legal standard for remedies. While both agree that a potential remedy for infringement is disgorgement of profits, they disagree over the scope of profits to be considered – plaintiffs argue that the profits to be considered are all profits attributable to infringement while Dickey's responds that the profits should be limited to the areas where the parties compete.

To resolve this legal issue before undergoing expensive discovery, the parties filed cross-motions for partial summary judgment to identify the scope of the profits to be considered in determining the disgorgement remedy. The parties agree that to resolve these motions the Court may assume (1) the trademark was infringed, (2) the infringement was willful, and (3) Dickey's used the infringed mark on a nation-wide basis, not just in the areas where it competed with plaintiffs.

## ANALYSIS

---

[1] There are factual disputes over whether plaintiffs have trademark rights in California, Nevada, Arizona, and Texas. The Court expresses no opinion on those disputes.

The damages available for trademark infringement under the Lanham Act are set forth in 15 U.S.C. § 1117(a): "[T]he plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  The statute goes on to give courts substantial discretion in awarding profits:  "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  *Id.*

While the statute does not specify the scope of the profits to be considered in a disgorgement remedy, it does provide some guidance by stating that the disgorgement will be "subject to principles of equity."  The particular principle of equity that should guide the Court was identified by the Ninth Circuit as "the principle of unjust enrichment traditionally applicable where property is used for profit without the owner's permission."  *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968).

In *Maier,* Fleischmann, a distiller of Scotch whisky, sued Maier, a beer brewer, claiming that Maier used Fleischmann's trademarked name "Black & White" on its beer products.  The trial court eventually found infringement and awarded Fleischmann a sum representing Maier's profits.  On appeal, Maier argued that the profit award was improper because Fleischmann never proved any lost or diverted sales as a result of Maier's use of the trademark, and cited caselaw from other Circuits holding that disgorgement of profits is only applicable in situations where the parties are in competition – where there is proof

**Memorandum Decision & Order – page 3**

of lost or diverted sales.  *Id.* at 121.  The Ninth Circuit rejected the analysis in those cases:

> These courts are protecting the trademark owner from only the most obvious form of damages – the diversion of sales, and are not in fact providing protection to the value of the good will built up in the trade-mark itself. No recognition is given to the possibility that customers who believe that they are buying a product manufactured by the plaintiff – whether such product is competitive or non-competitive – may be so unhappy with that product that they will never again want to buy that product or any other product produced by the same manufacturer, who they believe to be the plaintiff. Nor do these opinions recognize that, even if the infringing product is of higher quality than that bearing the registered trade-mark, the trade-mark registrant has been deprived of his right to the exclusive use and control of the reputation of his product.

*Id.* at 122.  A better approach, the Circuit concluded, would be to base disgorgement on the principle of unjust enrichment:

> It would seem fairly evident that the purposes of the Lanham Act can be accomplished by making acts of deliberate trade-mark infringement unprofitable. . . .  In those cases where there is infringement, but no direct competition, this can be accomplished by the use of an accounting of profits based on unjust enrichment rationale. Such an approach to the granting of accountings of profits would, by removing the motive for infringements, have the effect of deterring future infringements. The courts would therefore be able to protect the intangible value associated with trade-marks and at the same time be protecting the buying public from some of the more unscrupulous members of our economic community.

*Id.*  The Circuit noted that there may be some "harshness" in a rule requiring defendants to disgorge profits even though no sales were diverted but softened the blow by holding that a plaintiff "is not entitled to profits demonstrably not attributable to the unlawful use of the mark."  *Id. (quoting from Mishawaka Rubber v. S.S. Kresge,* 316 U.S. 203, 206 (1941)).  In other words, the infringer could "limit the profits which he must deliver to the plaintiff" by proving that "some purchasers bought goods bearing the infringing mark

**Memorandum Decision & Order – page 4**

because of the [infringer's] recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol." *Id.*  see also, See *Nintendo of America v. Dragon Pacific,* 40 F.3d 1007, 1012 (9th Cir.1994) (holding that "[t]he burden is upon defendant to prove that sales were demonstrably not attributable to the infringing mark").

Applied to this case, *Maier* would permit this Court – consistent with principles of equity – to award a disgorgement of those profits attributable to Dickey's willful infringement of plaintiffs' trademark even from geographic areas where plaintiffs do not compete with Dickey's.  After all, Dickey's has willfully infringed plaintiffs' trademark and used it nation-wide for a reason – to increase sales throughout its operations, not just in areas where it competes with plaintiffs.  Such an award would, according to *Maier,* remove the motive for infringements, deter future infringements,  and protect the intangible value associated with trade-marks.  *Maier,* 390 F.2d at 122.

Dickey's argues that *Maier* is distinguishable because it involved a lack of competition between the products at issue – whiskey and beer – while this case involves a lack of geographical competition between similar products.  But that is a distinction without a difference.  The language in *Maier* is broad and applies with equal strength to this case.

Defendants argue that plaintiffs' trademark is not registered and hence does not qualify for a disgorgement award.  But the Ninth Circuit has affirmed a district court's award of defendant's profits based on the infringement of an unregistered trademark in *U-Haul Intern., Inc., v. Jartran, Inc.,* 793 F.2d 1034, 1042 (9th Cir. 1986).  In *U-Haul,* the

**Memorandum Decision & Order – page 5**

Circuit stated that "we can see no reason to distinguish between registered and unregistered trademarks . . . . The type of conduct that these damages should deter is unrelated to the type of intellectual property protected." *Id. (quoting from Transgo Inc. v. Ajac Transmission,* 768 F.2d 1001, 1026 (9th Cir. 1985)).  The Court therefore finds this argument unpersuasive.

Dickey's argues that because plaintiffs cannot prove infringement in geographical areas where they do not compete, it would be anomalous to require Dickey's to disgorge profits from stores in those areas.  As Dickey's points out, the touchstone of proving infringement in Lanham Act cases is the likelihood of confusion.  *See Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1141 (9th Cir. 2004).  As plaintiffs conceded at oral argument, they could not enjoin Dickey's from using plaintiffs' trademark in, say, Virginia because plaintiffs have no presence in Virginia.  If plaintiffs cannot prove infringement in Virginia, why are they entitled to those profits Dickey's earned in its Virginia stores attributable to Dickey's willful use of plaintiffs' trademark?  The answer circles back to the equitable principles of unjust enrichment set forth in *Maier* – otherwise, a large entity with a nation-wide presence will often find it economical to steal a small competitor's trademark and use it nation-wide, having only to disgorge a relatively small amount of regional profits from stores in areas where the parties actually compete.  In that world, there is no deterrence and, in fact, a real incentive to steal trademarks.  *Maier* prevents that result by focusing on the disgorgement of unjust enrichment, and Dickey's would be unjustly enriched by profits it earned *anywhere* attributed to its willful infringement of plaintiffs' trademark.

**Memorandum Decision & Order – page 6**

**Conclusion**

For the reasons set forth above, the Court will grant plaintiffs' motion for partial summary judgment finding as a matter of law that the disgorgement of profits remedy in 15 U.S.C. § 1117(a) is governed by principles of unjust enrichment as set forth in *Maier* and encompasses profits made in any geographic location by Dickey's attributable to its willful infringement of plaintiffs' trademark.  Accordingly, Dickey's motion for partial summary judgment is denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the plaintiffs' motion for partial summary judgment (docket no. 23) is GRANTED and the defendant's motion for partial summary judgment (docket no. 24) is DENIED.

DATED: April 23, 2019

_____
B. Lynn Winmill
U.S. District Court Judge